# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION

|  |  |
|---|---|
| SHANEKA ANDREA WALKER,<br><br>  Plaintiff,<br><br>v.<br><br>SAFERENT SOLUTIONS, LLC,<br><br>  Defendant. | **Civil Action No.: 3:25-cv-612**<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

Shaneka Andrea Walker ("Plaintiff") by and through her counsel brings the following Complaint against SafeRent Solutions, LLC ("SafeRent") for violations of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*, arising out of a tenant screening report that SafeRent refused to publish to Plaintiff's potential landlord, due to the report being deleted by SafeRent. Plaintiff brings claims under the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), North Carolina General Statute § 75, *et seq.*, and for breach of the implied covenant of good faith and fair dealing claims against SafeRent for permanently deleting Plaintiff's SafeRent file and refusing to produce Plaintiff's report to her potential landlords. SafeRent has violated the Plaintiff's civil and consumer rights by scoring her more harshly than other consumers based on her protected status.

## INTRODUCTION

1.     This is an individual action for damages, costs, and attorney's fees brought against SafeRent pursuant to the FCRA, 15 U.S.C. § 1681, *et seq.* and UDTPA, North Carolina General Statute § 75, *et seq.*

1

2.	Plaintiff also brings North Carolina state law claims against SafeRent for break of implied covenant of good faith and fair dealing.

3.	SafeRent is a consumer reporting agency ("CRA") that compiles and maintains files on consumers on a nationwide basis.  It sells consumer reports, also known as tenant screening reports, generated from its database and furnishes these consumer reports to mortgage brokers, landlords, and property management companies who use the reports to make decisions regarding prospective borrowers and tenants.

4.	SafeRent refused to assemble and publish an accurate consumer report ("tenant screening report") to Plaintiff's prospective landlord.

5.	SafeRent deleted Plaintiff's account and records and/or refused to provide Plaintiff's tenant screening report due to Plaintiff's prior litigation against SafeRent regarding incorrect information on Plaintiff's tenant screening report (Case No. 3:22-cv-00544-MOC-DSC).

6.	Plaintiff's prospective landlord denied Plaintiff's housing application after receiving the communication from SafeRent that it could not provide a tenant screening report for Plaintiff.

7.	SafeRent's refusal to provide an accurate tenant screening report to Plaintiff's potential landlord was a violation of its duty arising under the FCRA as a credit reporting agency, and violations of the UDTPA and breach of implied covenant of good faith and fair dealing.

8.	SafeRent does not employ reasonable procedures to assure the maximum possible accuracy of the information it reports regarding consumers. SafeRent's failure to employ reasonable procedures resulted in Plaintiff's report being deleted.

9.     SafeRent committed these violations pursuant to its standard policies and practices, which harm innocent consumers seeking housing by prejudicing their prospective landlords with inaccurate information or providing no information whatsoever.

10.    SafeRent's inaccurate report cost Plaintiff the ability to rent the home that was suitably accommodating for her, and her family's needs, causing her emotional distress, embarrassment, inconvenience, anxiety, fear of homelessness, and financial loss.

11.    As a result of SafeRent's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of housing opportunities; loss of time and money trying to correct and obtain the tenant screening report; the expenditure of labor and effort disputing and trying to correct the lack of reporting; damage to her reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

12.    As a result of SafeRent's conduct, action, and inaction, Plaintiff brings claims against SafeRent for failing to follow reasonable procedures to assure maximum possible accuracy based on 15 U.S.C. § 1681e(b) of the FCRA, and for failing to conduct a reasonable reinvestigation to determine whether the information Plaintiff disputed – a refusal to provide a consumer report – was inaccurate and should be corrected in the subject housing background report, in violation of the FCRA, 15 U.S.C. § 1681i. Plaintiff is also bringing North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), North Carolina General Statute § 75,  and breach of implied covenant of good faith and fair dealing claims against SafeRent for permanently deleting Plaintiff's SafeRent file and refusing to produce Plaintiff's tenant screening report to her potential landlords.

**PARTIES**

13.     Plaintiff is a natural person residing in Charlotte, North Carolina, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

14.     SafeRent is a Delaware corporation doing business throughout the United States, including the State of North Carolina and in this District, and has a principal place of business located at 4600 Regent Boulevard, Irving, Texas 75063. SafeRent is registered to do business in the State of North Carolina and can be served through its North Carolina registered agent, Corporation Service Company, located at 2626 Glenwood Avenue, Suite 550, Raleigh, NC 27608.

15.     Among other things, SafeRent sells consumer reports, often called tenant screening reports, to mortgage brokers, property management companies, and landlords for their use in deciding whether to rent or otherwise offer housing to a prospective tenant. These reports are provided in connection with a business transaction initiated by the consumer.

16.     SafeRent is a consumer reporting agency as defined in 15 U.S.C. § 1681a(f) because for monetary fees, it regularly engages in the practice of evaluating and/or assembling information on consumers for the purpose of furnishing consumer reports for consumer purposes to third parties, and uses interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports.

**JURISDICTION AND VENUE**

17.     This Court has original jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

4

18.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

19.     This Court also has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 as Plaintiff's state law claims are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy.

20.     Alternatively, this Court has diversity jurisdiction under 28 U.S.C. § 1332 because the Parties are completely diverse, Plaintiff is a citizen of North Carolina and SafeRent is a citizen of Texas, and the amount in controversy exceeds $75,000.00.

## STATUTORY BACKGROUND

21.     Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they applied for housing. Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

22.     While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports. 15 U.S.C. § 1681.

23.     Congress, concerned about inaccuracies in consumer reports, specifically required consumer reporting agencies to follow "reasonable procedures to assure maximum possible accuracy" in consumer reports. 15 U.S.C. § 1681e(b).

24.     Consumer reports that contain factually incorrect information which does not belong to the consumer at issue or refusal to publish information that belongs to the consumer are neither maximally accurate nor fair to the consumers who are the subjects of such reports.

## THE FCRA'S PROTECTIONS FOR HOUSING APPLICANTS

25.     Despite its name, the FCRA covers more than just credit reporting, it also regulates consumer reports like the one SafeRent refused to prepare in Plaintiff's name.

26.     The FCRA provides a number of protections for housing applicants who are the subject of consumer reports for the purpose of securing housing and credit.

27.     In the parlance of the FCRA, tenant screening reports are "consumer reports," and providers of consumer reports, like SafeRent, are "consumer reporting agencies." 15 U.S.C. §§ 1681a(d) and (f).

28.     The FCRA imposes duties on consumer reporting agencies to assure that consumer reports are accurate and that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681.

29.     Under 15 U.S.C. § 1681e(b), consumer reporting agencies are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

30.     SafeRent disregarded its duties under the FCRA with respect to Plaintiff's consumer report.

## SAFERENT'S ILLEGAL BUSINESS PRACTICES

31.     Over the past 15 years, there has been increased collection and aggregation of consumer data, including criminal records and sex offender registration data. As a result of the increasing availability of this data, there has been a boom in the tenant screening industry.

32.     In the tenant screening industry, consumer reports are generally created by running automated searches through giant databases of aggregated criminal record data. The reports are

6

created and disseminated with little to no manual, in-person review, and the underlying court records are rarely directly reviewed in creating consumer reports.

33. Consumer Reporting Agencies, like SafeRent, collect millions of records from a number of sources with data from county, state, and federal level sources. The data included on the reports is often not obtained directly from court records on an individual basis but instead is purchased in bulk or scraped from court websites.

34. Given that SafeRent is in the business of selling consumer reports, SafeRent should be well aware of the FCRA and the attendant harm to consumers for reporting inaccurate or outdated information.

35. SafeRent places its business interests above the rights of consumers and reports such inaccurate information because it is cheaper for SafeRent to produce reports containing information that is inaccurate and incomplete than it is for SafeRent to exert proper quality control over the reports prior to their being provided to SafeRent's customers.

36. SafeRent places its business interests above the rights of consumers and reports such inaccurate information because it's easier for SafeRent to refuse to delete consumer reports than it is for SafeRent to maintain a corrected report after prior litigation.

37. SafeRent reports such erroneous and incomplete information because it wants to maximize the automation of its report creation process, thereby saving the costs associated with conducting the additional review necessary to remove the inaccurate.

38. SafeRent charges its customers the same price for reports that are grossly inaccurate as it does for accurate reports.

39. Appropriate quality control review would have allowed for the creation, and maintenance of an accurate report of Plaintiff's consumer and credit history.

40.     SafeRent has been sued by consumers, including in class actions, for civil and consumer rights violations that disadvantage Black and Hispanic housing applicants.

41.     The United States Department of Housing and Urban Development and the Department of Justice previously filed a statement of interest in a class action alleging scoring discrimination against Black and Hispanic housing applicants.

## FACTUAL ALLEGATIONS
### Plaintiff's Previous Lawsuit

42.     Plaintiff previously sued SafeRent for a lawsuit on October 12, 2022, in the Western District of North Carolina, with Case Number 3:22-cv-00544.

43.     Plaintiff brought the previous action against SafeRent for violation of 15 U.S.C. § 1681e(b) of the FCRA.

44.     In the 2022 lawsuit, Plaintiff completed a rental application through non-party FirstKey Homes Charlotte ("FirstKey") in or around June 2022.

45.     As part of the rental application, Plaintiff was required to consent to a background and credit check via SafeRent.

46.     Plaintiff learned her 2022 FirstKey application was being denied as a result of SafeRent's inaccurate reporting of a tradeline within her credit report.

47.     On March 16, 2023, Plaintiff settled her claims with SafeRent and filed a notice of settlement with this court.

48.     On March 28, 2023, Plaintiff and SafeRent filed a stipulation of dismissal.

49.     After settling her claims with SafeRent, Plaintiff believed the issue was resolved and that she would now be able to apply for housing without issues.

50.     Plaintiff was considering moving homes and started looking for a new home for her and her children.

8

**Plaintiff Applies for a Home with FirstKey Homes**

51.     Plaintiff's lease was set to expire on August 1, 2025, so Plaintiff began in advance to look for a new home.

52.     The cost of her current three-bedroom, two-bathroom home had become too high, and Plaintiff was unable to afford to continue living there.

53.     Plaintiff was looking for a home with sufficient space for herself and her five children and also within her price range.

54.     In or around March 2025, Plaintiff began searching for a new home in a good location that was suitable for her family.

55.     Specifically, Plaintiff was searching for a home that was in a safe neighborhood, clean, with sufficient space for her family, and within her budget.

56.     After spending time searching for a new home, Plaintiff found the perfect home for herself and her family.

57.     On or about April 2, 2025, Plaintiff found a four-bedroom, two-bathroom home rented through FirstKey Homes.

58.     The home was within Plaintiff's budget, had an additional room for her children, and, most importantly, was within her budget.

**SafeRent Refused to Publish an Accurate Tenant Screening Report to FirstKey Homes**

59.     On or about April 2, 2025, Plaintiff completed a rental application through non-party FirstKey and paid an application fee of $55.

60.     As part of the rental application through FirstKey, Plaintiff was required to consent to a background and credit check via SafeRent.

9

61.     FirstKey Homes, contracts with SafeRent to conduct tenant screening on prospective tenants to determine whether the prospective tenant is eligible to rent a home.

62.     On or about April 2, 2025, Plaintiff consented to the background and credit check via SafeRent.

63.     On or about April 2, 2025, FirstKey Homes ordered a tenant screening report concerning Plaintiff from SafeRent.

64.     Plaintiff eagerly waited for her rental application approval.

65.     When Plaintiff did not hear back for a number of days, she decided to reach out to FirstKey regarding her rental application.

66.     A FirstKey representative informed Plaintiff that SafeRent indicated that the Plaintiff had no SafeRent consumer file and thus could not deliver a tenant screening report.

67.     Upon information and belief, SafeRent also provided information to FirstKey that showed that Plaintiff had no consumer report and could not be scored.

68.     Plaintiff was shocked and worried about being denied housing again because of a SafeRent consumer report sold to her prospective landlord.

69.     SafeRent created a report on Plaintiff that indicated her report was undeliverable and she had no tenant screening history and communicated that consumer information to FirstKey.

70.     According to SafeRent, the sole reason it showed no tenant history was because it had deleted her file entirely as a result of her prior litigation against SafeRent for its FCRA violations.

71.     In fact, Plaintiff's prior lawsuit against SafeRent was based on SafeRent's failure to follow reasonable procedures to assure the maximum possible accuracy of the information it

10

published within the tenant screening report it sold about Plaintiff to Plaintiff's prospective landlord.

72.     Alternatively, SafeRent's conduct was based on invidious discrimination due to Plaintiff's race.

73.     Had SafeRent followed reasonable procedures, it would have maintained an accurate report on Plaintiff after the lawsuit, especially once it was on notice of its inaccuracies.

74.     Had SafeRent followed reasonable procedures, it could have created an accurate tenant report on Plaintiff upon request by Plaintiff's potential landlord.

75.     By refusing to deliver a report about Plaintiff to Plaintiff's potential landlord, SafeRent failed to follow reasonable procedures to assure that the report was as accurate as maximally possible, in violation of 15 U.S.C. § 1681e(b).

76.     It was an unfair practice for SafeRent to delete Plaintiff's SafeRent file instead of following reasonable procedures for maximally accurate information in response to a prior lawsuit, in violation of the North Carolina UDTPA.

77.     SafeRent did and does have an extensive file filled with consumer information about the Plaintiff contained in its files; it just chose to falsely communicate that it could not deliver a consumer report about her to FirstKey.

78.     SafeRent's refusal to deliver a consumer report to FirstKey communicates to the prospective landlord information that is used to evaluate her for tenancy and can mean that she has no consumer file, no tenant history, or no credit history.  It may indicate the information she is using doesn't exist, that she may be perpetrating a fraud or using fraudulent information, or that she doesn't have a consumer history, which then bears on her reputation, character, credit- or tenancy-worthiness.

**SafeRent Refuses to Provide a Tenant Screening Report Concerning Plaintiff
Due to Her Previous Lawsuit**

79.     Worried about finding a place to live and having to re-live the same nightmare she had previously suffered, Plaintiff desperately sought help from SafeRent.

80.     Shortly after learning of the rental application denial, Plaintiff contacted SafeRent by phone to dispute the information that SafeRent was unable to provide a report concerning Plaintiff to landlords.

81.     A SafeRent representative informed Plaintiff that as a result of her previous lawsuit against it, SafeRent had deleted Plaintiff's file permanently.

82.     On or about April 14, 2025, SafeRent followed up with an email stating that it would be unable to provide a tenant screening report for Plaintiff due to her previous litigation and asked her to purchase a tenant screening report from another company if FirstKey would allow it.

83.     SafeRent informed Plaintiff that the consumer information it had communicated to FirstKey was that it would not deliver a tenant screening report concerning Plaintiff.

84.     In or around April 2025, Plaintiff was notified by FirstKey that her housing application was denied.

85.     Upon information and belief Plaintiff was denied as a direct result of the SafeRent's refusal to provide a tenant screening report for Plaintiff.

86.     Plaintiff was panicked, confused, and concerned about the impact of the inability to obtain a proper background check from SafeRent.

87.     Specifically, Plaintiff was worried she would be unable to obtain housing for herself and her five children in her area because many landlords use SafeRent, and SafeRent refused to produce a tenant screening report for Plaintiff.

88.     The refusal by SafeRent to produce a tenant screening report about the Plaintiff is, in fact, not only negative but a false consumer report that caused the Plaintiff an immediate injury of housing denial.

89.     This refusal is especially surprising because SafeRent has a consumer file about the Plaintiff, the ability to put it into a tenant screening report, and provide the tenant screening report to Plaintiff's landlord, and it has done so in the past.

90.     SafeRent retaliated against Plaintiff because Plaintiff had filed a lawsuit against SafeRent previously.

**Plaintiff Requested her Tenant Screening Report through SafeRent and Disputed the Inaccurate Information**

91.     On or about May 19, 2025, Plaintiff mailed a letter to SafeRent requesting her SafeRent consumer disclosure.

92.     Plaintiff's request for her tenant screening report included her full name, address, date of birth, full Social Security Number, and her email address so SafeRent could identify her in its system. In support of her request and disputes, Plaintiff provided a copy of her driver's license, and a utility bill as proof of her identity.

93.     Plaintiff provided all the exact same information SafeRent usually requests to ensure that the consumer disclosure it is supplying to a consumer actually belongs to that consumer, pursuant to its duty under 15 U.S.C. § 1681h(a)(1).

94. At the time Plaintiff requested her disclosure, SafeRent already knew that her consumer report had been requested by FirstKey in April, that Plaintiff had already disputed the fact that SafeRent falsely reported to FirstKey that the Plaintiff did not have a SafeRent report.

95. On or about May 19, 2025, SafeRent sent an email to Plaintiff informing her that she should complete SafeRent's own Consumer Disclosure Request Form.

96. At the time SafeRent sent this request for more information and a specialized form to Plaintiff, it had long been on notice that it was a violation of the FCRA to withhold a consumer's request for her file by requiring consumers to jump through additional hoops and submit a special form before providing their files to them.

97. The Consumer Financial Protection Bureau ("CFPB") is the federal regulatory agency with jurisdiction over the implementation of the FCRA. Prior to the CFPB, the Federal Trade Commission was tasked with regulatory authority.

98. The CFPB has issued specific guidance to consumer reporting agencies, that it is a violation to require consumers to use a special form before commencing an investigation or providing a disclosure. Prior to the CFPB, the FTC issued similar guidance.

99. On or about June 9, 2025, Plaintiff completed SafeRent's Consumer Disclosure Request Form and mailed it to SafeRent. The information Plaintiff was required to submit again was the same exact information that the Plaintiff had already supplied in her previous written disclosure requests.

100. Along with the request, Plaintiff also sent SafeRent another letter disputing SafeRent's representation that Plaintiff's SafeRent file could not be found, had been deleted, or removed.

14

101.    Within her dispute letter, Plaintiff explained that FirstKey automatically denied her rental application and that without a SafeRent report, she would continue to be denied housing.

102.    Plaintiff asked SafeRent to retrieve and restore her consumer file in its system so she could proceed with housing applications.

**SafeRent failed to Conduct a Reasonable Reinvestigation and
Correct the Tenant Screening Report**

103.    On or about June 10, 2025, Plaintiff received a dispute response from SafeRent via email.

104.    Within the dispute response, SafeRent again communicated that due to the previous lawsuit, Plaintiff SafeRent file was deleted from the system.

105.    SafeRent violated 15 U.S.C. § 1681g by refusing to provide Plaintiff with a copy of her consumer report.

106.    SafeRent then again stated that Plaintiff could purchase her consumer report from another consumer reporting agency.

107.    On or about June 13, 2025, SafeRent again communicated via email that it would not restore Plaintiff's SafeRent file because it had a block on her file and therefore would not fulfill any requests.

108.    SafeRent made a choice to continue to visit a foreseeable injury to the Plaintiff based on her prior litigation and/or her protected status.

109.    SafeRent has a history of discriminating against consumers in protected classes.

110.    SafeRent refused to provide Plaintiff's tenant screening report to FirstKey in order to continue to punish her for suing them previously and for being in a protected class.

111.     Despite Plaintiff's dispute, SafeRent failed to conduct a reasonable reinvestigation of Plaintiff's dispute and failed to correct the disputed information in violation of 15 U.S.C. § 1681i(a)(1)(A).

112.     On or about July 22, 2025, SafeRent finally provided Plaintiff with her "Screening Details" that contained what appears to be a tenant screening report, a completed "Registry Check Plus Report" and additional address information report.

113.     This report contained personal identifying information about the Plaintiff, her previous addresses, a court records search result, and social security number validation.

114.     Upon information and belief, SafeRent could have provided Plaintiff -- or her potential landlords -- with her tenant screening report at any point but refused to do so.

### Plaintiff Sustained Concrete Injuries Resulting in Foreseeable Damages Due to SafeRent's Inaccurate Reporting

115.     Because SafeRent failed to issue a corrected tenant screening report, FirstKey Homes did not reconsider its decision to deny Plaintiff's housing application.

116.     But for SafeRent's refusal to provide a tenant screening report, Plaintiff's housing application would have been approved, and Plaintiff would have been spared the humiliation, embarrassment, and stress imposed upon Plaintiff to correct SafeRent's erroneous lack of reporting.

117.     SafeRent's refusal to report cost Plaintiff a housing opportunity that met her and her family's needs, including those attendant to affordability, safety, and proximity to work, friends, and family.

118.     Plaintiff was looking forward to living in the four-bedroom, two-bathroom home because it was in a safe neighborhood, provided sufficient space for her and her five children, was near the major highways, her work and family, and was within her budget.

16

119. Plaintiff is afraid that she will end up homeless with her children again as she was previously when she was forced to file the 2022 lawsuit.

120. Plaintiff experienced sleepless nights, often finding herself unable to fall asleep and/or stay asleep due to the stress and humiliation she felt. Plaintiff found herself up late into the night wondering when – or if – she would be able to find suitable housing for her family.

121. Plaintiff experienced feelings of homelessness and helplessness.

122. Plaintiff is afraid to continue applying for housing and has been chilled from applying for housing.

123. Plaintiff is afraid she will be denied if she applies for housing as many landlords use SafeRent for background checks in her area.

124. Plaintiff is afraid she will need to continue living in her current home, which she cannot afford.

125. Plaintiff was forced to resign a lease with her landlord on her current home that is outside of her budget.

126. Plaintiff is constantly scared of being evicted from her current home if she is unable to pay her current rent.

127. Plaintiff lives in fear every month that she will be unable to pay the rent.

128. Plaintiff's children have asked Plaintiff if they are going to be homeless because Plaintiff is having difficulty paying the rent at her current home.

129. Plaintiff feels guilty and stressed that she is unable to provide her children with stability.

130. Plaintiff suffers from emotional distress, stress, and anxiety because she is once again unable to obtain housing due to SafeRent's actions.

131. Due to SafeRent's unreasonable procedures and shoddy, if any, dispute reinvestigation, Plaintiff has not continued to seek housing due to a fear of further rejections based on SafeRent continued refusal to create an accurate tenant screening report for Plaintiff.

132. The injuries suffered by Plaintiff as a direct result of SafeRent's erroneous and prejudicial refusal to report are the type of injuries that the FCRA was enacted to address. Under common law, SafeRent's conduct would have given rise to causes of action based on defamation and invasion of privacy.

133. As a result of SafeRent's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of housing opportunities; loss of time and money trying to correct the tenant screening report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to her reputation; loss of sleep; fear of defaulting on her current rent; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

## <u>CLAIMS FOR RELIEF</u>
### COUNT I
### 15 U.S.C. § 1681e(b)
### Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy

134. Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

135. SafeRent is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

136. At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

137. At all times pertinent hereto, the above-mentioned tenant screening report was a "consumer report" as that term is defined by 15 U.S.C. § 1681a(d).

18

138. SafeRent violated 15 U.S.C. § 1681e(b) by failing to establish or to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of the consumer report it sold about Plaintiff as well as the information it published within the same.

139. Instead of following reasonable procedures to assure maximum possible accuracy, SafeRent deleted Plaintiff's SafeRent file in response to Plaintiff's prior lawsuit.

140. Deleting Plaintiff's SafeRent file instead of correcting the inaccuracy is not a reasonable procedure to assure maximum possible accuracy.

141. As a result of SafeRent's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of housing opportunities; loss of time and money trying to correct the consumer report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to her reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

142. SafeRent willfully violated 15 U.S.C. § 1681e(b) in that its conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

143. Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from SafeRent in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

//

# COUNT II
## 15 U.S.C. § 1681i
### Failure to Perform a Reasonable Reinvestigation

144.    Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

145.    The FCRA mandates that a CRA conducts an investigation of the accuracy of information "[I]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer. See 15 U.S.C. § 1681i(a)(1). The Act imposed a 30-day time limit for the completion of such an investigation. *Id*.

146.    The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is in fact inaccurate or is unable to verify the accuracy of the disputed information, the CRA is required to delete that item of information from the consumer's file. See 15 U.S.C. § 1681i(a)(5)(A).

147.    On at least one occasion during 2025, Plaintiff disputed the inaccurate information with SafeRent and requested that SafeRent correct and/or delete the inaccurate information in the tenant screening report that is patently inaccurate, misleading, and highly damaging to her, namely, refusing to provide any information on plaintiff at all.

148.    In response to Plaintiff's dispute, SafeRent failed to conduct a reinvestigation, or such investigation was so shoddy as to allow patently false, logically inconsistent, and damaging information to remain in the consumer report and refused to correct the consumer report at issue.

149.    SafeRent violated 15 U.S.C. § 1681i by failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate; by failing to delete the disputed inaccurate information from the subject consumer report; by failing to follow reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file; and by relying upon verification from a source it has reason to know is unreliable.

20

150.    As a result of SafeRent's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of housing opportunities; loss of time and money trying to correct the consumer report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to her reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

151.    SafeRent willfully violated 15 U.S.C. § 1681i in that its conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

152.    Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from SafeRent in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT III
## UDTPA North Carolina Chapter 75-1

153.    Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

154.    The purpose of North Carolina's Unfair and Deceptive Trade Practices Act is to provide "civil legal means to maintain [ ] ethical standards of dealings between persons engaged in business, and between persons engaged in business and the consuming public within this State, to the end that good faith and fair dealings between buyers and sellers at all levels of commerce be had in this State." *Bhatti v. Buckland*, 328 N.C. 240, 245, 400 S.E.2d 440, 443 (1991) (cleaned up).

21

155.    To recover under North Carolina's Unfair and Deceptive Trade Practices Act, a plaintiff must show that the defendant: "(1) committed an unfair or deceptive act or practice; (2) the action in question was in or affecting commerce; and (3) the act proximately caused injury to the plaintiff." *Dalton v. Camp*, 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001).

156.    Rather than correcting Plaintiff's tenant screening report following her previous lawsuit, SafeRent chose to delete Plaintiff's file entirely and refused to provide a tenant screening report about Plaintiff to Plaintiff's potential landlords.

157.    SafeRent's refusal to provide a tenant screening report to Plaintiff's potential landlords was an unfair or deceptive act or practice.

158.    Plaintiff's potential landlords were requesting a tenant screening report about Plaintiff from SafeRent in connection with Plaintiff's housing applications. Had SafeRent provided an accurate report about Plaintiff, Plaintiff's applications would have been approved, and Plaintiff would have entered into a landlord-tenant relationship with said landlords. Accordingly, SafeRent's refusal to provide a tenant screening report about Plaintiff was in or affecting commerce.

159.    Because SafeRent refused to provide Plaintiff's potential landlords with Plaintiff's tenant screening report, Plaintiff was unable to rent from said landlords. Accordingly, SafeRent's refusal to provide a tenant screening report to Plaintiff's potential landlords proximately caused injury to Plaintiff was injured in a way that was completely foreseeable.

160.    Under the North Carolina Unfair and Deceptive Practices Act, a prevailing party is entitled to recover damages for injuries sustained. When damages are assessed in such cases, judgment is rendered in favor of the plaintiff and against the defendant for treble the amount fixed

by the verdict. N.C. Gen. Stat. 75-16. Plaintiff is entitled to damages from SafeRent in an amount equal to treble the amount fixed by a verdict rendered by a jury of Plaintiff's peers.

161.    Under the North Carolina Unfair and Deceptive Practices Act, a prevailing party may also recover reasonable attorneys' fees. Accordingly, Plaintiff is entitled to recover her reasonable attorneys' fees from SafeRent.

**COUNT IV**
**15 U.S.C. § 1681g**
**Willful Failure to Provide the Consumer with a Timely Disclosure of Her Full Tenant Screening Report**

162.    Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

163.    15 U.S.C. § 1681g requires that consumer reporting agencies supply consumers with all information in their file at the time they make that request, including the source of that information.

164.    On or about May 14, 2025, and on or about June 9, 2025, Plaintiff requested a copy of her complete consumer report from SafeRent.

165.    SafeRent failed to provide Plaintiff with a copy of her consumer report upon receiving Plaintiff's request.

166.    Accordingly, SafeRent is individually liable to Plaintiff under § 1681g for failing to provide Plaintiff with a copy of her consumer report.

167.    As a result of SafeRent's conduct, action, and inaction, Plaintiff suffered actual damages which have been further described above.

168.    SafeRent's conduct, actions, and inactions were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court

23

pursuant to 15 U.S.C. § 1681n. Alternatively, SafeRent was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

169.    Plaintiff is entitled to recover attorneys' fees and costs from SafeRent in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT V
## Breah of Implied Covenant of Good Faith and Fair Dealing

170.    Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

171.    "In every contract there is an implied covenant of good faith and fair dealing that neither party will do anything which injures the right of the other to receive the benefits of the agreement." *Heron Bay Acquisition, LLC v. United Metal Finishing, Inc.*, 781 S.E.2d 889, 894 (N.C. Ct. App. 2016) (quoting *Bicycle Transit Authority v. Bell*, 314 N.C. 219, 228, 333 S.E.2d 299, 305 (1985) (quoting *Brown v. Superior Cour*t, 34 Cal. 2d 559, 564, 212 P.2d 878, 881 (1949))).

172.    "Under North Carolina law, every contract contains 'an implied covenant of good faith and fair dealing that neither party will do anything which injures the rights of the other to receive the benefits of the agreement.'" *Cordaro v. Harrington Bank, FSB*, 817 S.E.2d 247, 256 (N.C. Ct. App. 2018) (quoting *Bicycle Transit Auth. v. Bell*, 314 N.C. 219, 228, 333 S.E.2d 299, 305 (1985)).

173.    Following Plaintiff's previous lawsuit, SafeRent entered into a contractual agreement with Plaintiff pursuant to the settlement of Plaintiff's claims.

174.    At some unknown point in time thereafter, SafeRent chose to delete Plaintiff's SafeRent file in retaliation against Plaintiff because she chose to exercise her rights under the FCRA.

24

175. SafeRent did not inform Plaintiff during her lawsuit, prior to dismissal, that it would delete Plaintiff's SafeRent file in full.

176. SafeRent knew, or should have known, that deleting Plaintiff's SafeRent file would prevent Plaintiff from obtaining future housing with SafeRent customers.

177. Because SafeRent was able to eventually generate a disclosure, it is obvious that SafeRent did not really delete the Plaintiff's file.

178. At least since 2001, SafeRent has been on notice that returning a report that indicated there was no file about her is a consumer report governed by the FCRA.

179. SafeRent knew, or should have known, that if it did not generate a tenant screening report for Plaintiff, its customers would be unable to review Plaintiff's credit history and consumer history and would therefore refrain from entering into leasing agreements with Plaintiff.

180. SafeRent knew, or should have known, that its customers rely upon SafeRent's tenant screening reports in order to make decision on whether or not the customers will approve a rental application.

181. SafeRent knew, or should have known, that Plaintiff would be harmed if her SafeRent file could not be obtained by potential landlords.

182. Plaintiff respectfully requests all damages allowable by law, in an amount to be proven at trial, including out of pocked losses, as well as compensatory damages, consequential damages, emotional distress, and other damages as may be discovered.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

i.      Determining that SafeRent negligently and/or willfully violated the FCRA;

ii. Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

iii. Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA;

iv. Awarding Plaintiff reasonable attorneys' fees and costs as provided by 75-16.1. of the UDTPA and,

v. Granting further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

Date: August 12, 2025        RESPECTFULLY SUBMITTED,

*/s/ Dawn McCraw*
Dawn McCraw, NC Bar #54714
**CONSUMER JUSTICE LAW FIRM PLC**
8095 N. 85th Way
Scottsdale, AZ 85258
T: (480) 626-1956; (602) 807-1527
E: dmccraw@consumerjustice.com

*Attorneys for Plaintiff Shaneka Andrea Walker*

26